28944. SOUTHERN AUTO FINANCE COMPANY *v.* CHAMBERS.

DECIDED JULY 7, 1941.

*Carl F. Hutcheson, Robert B. Blackburn,* for plaintiff.
*Durwood T. Pye,* for defendant.

STEPHENS, P. J. Southern Auto Finance Company sued W. C. Chambers Jr., to recover an alleged unpaid balance of $190 due on the purchase-price of an automobile. It appeared from the contract, which was incorporated as part of the petition, that Callaway Motor Company, on October 18, 1938, sold to Chambers an automobile for $930, on which $225 had been paid, and that the balance, $705 was payable in monthly installments of $40 on November 18, 1938, and on the same day of each month thereafter. On October 31, 1938, the Callaway Motor Company transferred the contract to the plaintiff. The contract was a retention-title contract and contained the following provision: "It is further agreed by undersigned that in case of default in payment of any installment for three days after maturity, or in case of violation of any other terms of said contract, that vendor, at its option, may either with or without legal proceedings, retake possession of said property, in which case, payments made are to cover rental and depreciation of said car. Or in case of said default vendor may retake possession of said property as hereinbefore mentioned, with any accessories or equipment added thereto, sell the same either at public or private sale, and credit the within described note with the net proceeds of said sale, after deducting expense of selling, the balance remaining to be paid to me, and the deficiency, if any, to be paid by me."

The defendant in his plea and answer admitted that he had purchased the automobile from the transferor of the plaintiff and had not paid all of the purchase-money, but alleged that after he made a last payment to the plaintiff on one of the installments due under the contract the automobile was turned over by the defendant to the plaintiff under an agreement and understanding between them that the plaintiff was to estimate the cost of needed repairs upon the automobile and advise the defendant as to how the cost of repairs was to be paid; that the plaintiff, after having so acquired possession of the automobile for the purpose alleged, without any notice of any kind to the defendant, sold the automobile for $160 and appropriated the money to its own use; that the defendant had no knowledge of what the plaintiff had done until the present suit was filed; that this action on the part of the plaintiff amounted to a rescission of the contract, and obligated the plaintiff to return to the defendant the money which the defendant had paid on the pur-

chase-price of the automobile, to wit, $580, less reasonable hire for the automobile during the time it was in the defendant's possession in the sum of $100. The defendant asked judgment against the plaintiff for $480. The defendant further alleged that he bought the automobile from Callaway Motor Company on a contract by which he paid $225 as the cash payment "down," and agreed to pay monthly installments, some of which, amounting to $355, were afterwards paid by the defendant to the plaintiff as the transferee of Callaway Motor Company.

On the trial the contract as alleged and the payments made by the defendant as alleged were established without contradiction. It appears from the evidence for the plaintiff that the defendant defaulted in payments, and "the car was stored with the plaintiff for the purpose of giving Chambers [the defendant] opportunity to bring the money and resume payment, and upon his failure, the car was to be sold to the highest bidder;" that the car brought $160 which amount was credited, leaving a balance due of $190. The credit manager for the plaintiff testified that he had been connected with the plaintiff since January 4, 1934, and that he instructed his "adjuster to endeavor to locate the car" and "bring it in for storage if payment could not be made;" that the car "was to be stored so as to give the customer a chance to make payment, or in default of payment the car was to be ultimately sold;" that he notified the defendant that the plaintiff would have to sell the car unless the defendant took care of the payments; that the car was held from October 23 until November 17, and during this period the plaintiff notified the defendant that the defendant had twenty-four days in which to work out a satisfactory "solution of the contract;" that when the car was taken by the plaintiff on October 23, the September 18 payment was past due and the October payment was past due for five days; that the car was sold on November 17 at a private sale to a Mr. Robinson; that the plaintiff "made no agreement to make repairs on this car after it was pulled, and made no agreement to hold the car subject to the orders of Mr. Chambers for the purpose of determining the cost of repairs, and made no agreement with Mr. Chambers not to sell the automobile other than the agreement to hold the car for five days through his adjuster, that he himself made no agreement."

Mr. Russell testified that during the period referred to he was

credit man and adjuster for the plaintiff; that he contacted the defendant in regard to the account of Southern Auto Finance Company in 1939; that the defendant had the car brought to the garage and stored for Southern Finance Company; that the payments were delinquent at the time; that at the time the condition of the car was discussed with the defendant and it was suggested to him that the car was being held because the payments were delinquent; that witness would find out how much it would cost to repair the car, but made no agreement with the defendant to bind the company for making repairs, and made no agreement that the car would not be sold pending the estimate for repairs, but did agree to hold the car for five days.

The defendant testified that after he bought the car it was badly in need of repairs. As to the transactions with the plaintiff's credit adjuster, Russell, after the defendant got behind in his payments, the defendant testified as follows: "Russell came down about ten in the morning, and my father was present at that time, and I introduced him to Russell and we talked it over; and in my father's presence Russell and I agreed to go with him and help him tow the automobile in, and let him take somebody to drive the automobile, and take it to Harrison's; and he made it plain they would fix the automobile and they would refinance the automobile from the beginning, and they would fix the car up and give me a written guarantee. I didn't have that before. He said the finance company and Harrison's were all the same. After we had the agreement that the car would be towed in and repairs estimated and added to the notes, he was to come back and see me in a day or two; there wasn't anything for me to do; he was to come back to see me. I helped tow it and we pulled it to Harrison's used-car lot and put it inside the garage on the hill. After the car was taken under that agreement the only time I was ever notified was when somebody came out and handed my wife this suit. I didn't know whether they had disposed of the car or whether they had it. . . They never gave me any notice after the agreement was made that they were demanding any more payments under the contract. They never gave me any notice of any kind. They never notified me they were going to sell the car. They never made any demand on me for money until this suit was filed; I always thought they were holding the car up there until this suit was filed."

After consideration of the above evidence, and other evidence introduced which it is not necessary to refer to or quote from, the jury found a verdict for the defendant against the plaintiff in the sum of $480, which represented the amount the defendant had paid on the purchase-price of the automobile, less $100. The plaintiff made a motion for new trial on the general grounds and on one special ground that the court erred in charging the jury.

■ The defendant contends that the repossession of the car and its sale afterwards by the plaintiff amounted to a rescission of the contract by the plaintiff, which the defendant could accept and thereby be authorized to recover the amount he had paid under the contract less a reasonable value of the hire of the automobile while in the defendant's possession. Under the terms of the contract the plaintiff had a right to repossess the car without legal proceedings after the defendant had become three days in default as to payment of any installment due under the contract, and sell the car at public or private sale, and credit the defendant on the unpaid purchase-price with the net proceeds of the sale after deducting the expenses of the sale. It is undisputed that before the expiration of the contract the plaintiff repossessed the car from the defendant and sold it. This would amount to a rescission by the plaintiff of the contract unless the car was repossessed and sold by the plaintiff, either with the consent of the defendant, or without the defendant's consent pursuant to the terms of the contract. It does not appear undisputed that the car was repossessed and sold with the defendant's consent. While it appears undisputed that the adjuster for the plaintiff, who was instructed by the plaintiff to bring the car in for storage if payment could not be made, obtained possession of the car for the plaintiff, and it was afterwards sold by the plaintiff, the evidence is in conflict as to whether the repossession was for the purpose of resale by the plaintiff upon the ground of nonpayment by the defendant, as authorized by the terms of the contract, or whether the plaintiff's adjuster or agent repossessed the car under an agreement and understanding between him and the defendant that the car was retaken by the plaintiff for the purpose of estimating needed repairs on the car and that the contract would be refinanced. Whether or not the plaintiff's agent who repossessed the car had no authority from his principal to repossess it on any ground other than under the terms of the contract,

he did not, according to the defendant's testimony, repossess the car under the terms of the contract, but repossessed it under a special agreement and understanding with the defendant that the car was to be held by the plaintiff for the defendant's benefit while the plaintiff estimated repairs on the car and pending a readjustment of the contract of sale between the parties. The jury were authorized to find as a fact that the plaintiff did not repossess the car for the purpose of resale as authorized under the contract. If the plaintiff in repossessing the car did not do so for the purpose of resale, as it had authority to do under the terms of the contract, could the plaintiff afterwards, while the car was in its possession, after having been taken over under the agreement testified to by the defendant, and while held for the defendant's benefit, assert possession for the purpose of resale under the contract, and lawfully sell it under the authority of the provision in the contract, and apply the proceeds, as the plaintiff has done, to the credit of the defendant on the purchase-price? Whether or not a seller, where the property has been sold under a contract containing a provision for repossession and sale upon nonpayment, may repossess the property from the purchaser and afterwards sell it and be acting pursuant to the contract, although in repossessing the property and selling it he did not assert or inform or notify the purchaser that the seller was repossessing it with the intention to sell it as provided in the contract, it certainly can not be held that where the seller has acquired possession of the property from the purchaser, not for the purpose of resale under the provision of the contract, but under an agreement with the purchaser to hold the property for the express purpose of making repairs thereon and refinancing the contract, the seller can secretly convert that possession into a taking under the terms of the contract and sell the property under the authority of the contract without notice to the purchaser of such repossession and intention to sell. In the first case it might reasonably be held that the mere retaking by the seller of the property from the purchaser, without any assigned reason therefor, was a taking under the terms of the contract with the right to resell, and no notice to the purchaser of the seller's intention was necessary. This could be on the theory that the mere taking of the property by the seller from the purchaser, without more, was presumably an act lawfully done pursuant to the terms of the contract, and that

the purchaser, having had possession of the property and necessarily being cognizant of its taking by the seller, necessarily was put on notice of the seller's repossession of the property under the terms of the contract with the intent to sell and apply the proceeds to the debt. In the second case, however, where the property is taken by the seller from the purchaser under an express agreement and understanding between the parties that the property is repossessed for some purpose other than a repossession for the purpose of sale, as where the property is repossessed under an agreement by which the seller is to estimate repairs and refinance the contract, the seller can not afterwards, while the property is not in the possession of the defendant, assert possession over it and sell it pursuant to the terms of the contract by which the property could be repossessed by the seller and sold and the proceeds applied upon the unpaid purchase-price, without some notice to the purchaser of the seller's intention to sell the property pursuant to the terms of the contract. Where the seller sells the property so repossessed, in the absence of any knowledge on the part of the purchaser that the seller has sold the property, such sale amounts to a conversion of the property of the defendant by the seller, and amounts to a rescission of the sale by the seller, which rescission the purchaser can accept, and, after accepting such rescission, may recover of the seller the amount which has been paid on the purchase-price less the reasonable hire of the car.

The jury in this case were authorized to find that the plaintiff had not repossessed the property in accordance with the terms of the contract for the purpose of resale, and that the sale of the property by the plaintiff without notice to the defendant amounted to a rescission of the contract, and that the defendant was authorized to recover in the amount of the verdict rendered for the defendant against the plaintiff, which was in a sum less than the amount which had actually been paid on the purchase-price.

■ Whether or not the adjuster of the plaintiff, in repossessing the car from the defendant, did not have authority to repossess the car on any ground other than the ground expressed in the contract, namely, for the purpose of sale by the plaintiff on the defendant's default in payment, to repossess the car under express authority from the plaintiff so to do, but in repossessing the car he did so, if the defendant is to be believed, on an express ground not in ac-

cordance with the terms of the contract, and did not repossess the car for the purpose of resale by the plaintiff as provided by the contract, the plaintiff by its agent, the adjuster, did not repossess the car in accordance with the terms of the contract. It was therefore immaterial whether the plaintiff's agent in repossessing the car had authority, either apparent or otherwise, to repossess the car under an agreement with the defendant by which the plaintiff was to make an estimate of repairs on the car and readjust the contract. It was therefore not harmful to the plaintiff for the court to charge that the plaintiff would be bound by the alleged agreement as to repossessing the car for the purpose of making the needed repairs etc., if the agent had "apparent authority" to make such agreement.

The evidence authorized the verdict, and no error appears.

*Judgment affirmed. Sutton and Felton, JJ., concur.*